**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANJALI SINGHAL,

                    Plaintiff,

  -against-

DOUGHNUT PLANT, INC., DOUGHNUT PLANT
MANAGEMENT INC., THE INTERNATIONAL
DONUT PLANT LLC and MARK ISREAL,

                  Defendants.
-----------------------------------------------------------X

Civil Case No:

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff ANJALI SINGHAL, by and through her attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants DOUGHNUT PLANT, INC., DOUGHNUT PLANT MANAGEMENT INC., THE INTERNATIONAL DONUT PLANT LLC and MARK ISREAL, (collectively referred to as "Defendants,") upon information and belief as follows:

**NATURE OF CASE**

Plaintiff, ANJALI SINGHAL, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Act of 1978 ("PDA"), the Family and Medical Leave Act of 1993, 29 U.S.C.§ 2601 et seq. (the "FMLA"), the New York State Human Rights Law Executive Law, § 296 *et seq.* ( "NYSHRL"), and the New York City Human Rights Law ("NYCHRL") as amended by the New York City Pregnant Workers Fairness Act ("NYC PWFA"), N.Y.C. Admin. Code §§8-101 *et seq*., based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367 seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, pregnancy discrimination, sex

discrimination, gender discrimination, familial status discrimination, FMLA interference, retaliation, and wrongful termination by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and the FMLA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around February 26, 2019, Plaintiff ANJALI SINGHAL submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC"). The federal charge number is 520-2019-01496.

4. Around December 9, 2019, Plaintiff ANJALI SINGHAL received a Right to Sue Letter from the EEOC for federal charge number 520-2019-01496.

5. On March 6, 2020, Plaintiff and Defendants entered into an agreement to toll the applicable statute of limitations. As such, Plaintiff has satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

6. Venue is proper in this court, because Defendant Doughnut Plant resides in New York County, within the Southern District of New York.

## PARTIES

7. At all times material, Plaintiff was an individual pregnant woman who is a resident of the State of New York, Queens County.

8. At all times material, Defendant DOUGHNUT PLANT, INC. (hereinafter referred to as "Doughnut Plant Inc.") is a domestic business corporation duly existing by the virtue and laws of

the State of New York that does business in the State of New York.

9. At all times material, Defendant DOUGHNUT PLANT MANAGEMENT INC. (hereinafter referred to as "Doughnut Plant Management") is a domestic business corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. At all times material, Defendant THE INTERNATIONAL DONUT PLANT LLC (hereinafter referred to as "International Donut Plant") is a domestic limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

11. At all times material, Doughnut Plant Inc., Doughnut Plant Management, and International Donut Plant were either a single integrated employer or joint employers of Plaintiff (hereinafter collectively referred to as "Doughnut Plant").

12. At all times material, MARK ISREAL (hereinafter referred to as "Isreal") was and is the Owner and Chief Executive Officer of Defendant Doughnut Plant. Isreal held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Isreal held the power to hire and fire Plaintiff.

13. At all times material, Defendants meet the definition of an employer under all applicable state and local statutes.

## MATERIAL FACTS

14. From 2003 until June 2016, Plaintiff served as outside counsel for Defendant Doughnut Plant.

15. Around June 27, 2016, Defendant Doughnut Plant hired Plaintiff as their Chief Management Officer & General Counsel.

16. Around February 14th, 2018, Plaintiff told Defendant Isreal that she was pregnant, that she was due to give birth in September 2018, and that she would need to take protected maternity leave towards the end of the year.

17. In response, Defendant Isreal remained silent before finally stating that Plaintiff would need to stop working because he could no longer afford to pay Plaintiff.

18. Plaintiff was shocked and disheartened by Defendant Isreal's response and informed him that terminating her employment because she was pregnant constitutes unlawful discrimination.

19. Thereafter, Defendant Isreal immediately changed his mind and told Plaintiff that she could still work, but that she could only work on specific urgent matters.

20. Nonplussed, Plaintiff asked Defendant Isreal what else he was planning to do to improve Defendant Doughnut Plant's financial condition, besides her illegal demotion.

21. In response, Defendant Isreal suddenly stood up and walked out claiming that he needed to catch a flight and that he would reach out to schedule a time to continue their conversation on February 20, 2018. However, Defendant Isreal never followed up with Plaintiff to continue their meeting.

22. Around February 21, 2018, Defendant Doughnut Plant Retail Manager Jesse Auguste (hereinafter referred to as "Auguste") remarked that he was surprised to see Plaintiff at her desk because Defendant Doughnut Plant had told him that Plaintiff was terminated.

23. Around February 27, 2018, Defendant Isreal called Plaintiff into a meeting and proceeded to yell at her for about ninety (90) minutes to express his outrage concerning Defendant Doughnut Plant Controller Rupa Patel's (hereinafter referred to as "Patel") notice of resignation.

24. In response, Defendant Isreal told Plaintiff to offer the Controller whatever higher salary was necessary to convince him to stay and if that did not work, Plaintiff was instructed to micromanage the Controller's work until his departure from the company.

25. Thereafter, Plaintiff immediately inquired how Defendant Isreal could afford to pay the Controller a higher salary if she had been demoted due to financial concerns.

26. In response, Defendant Isreal told Plaintiff that she could resume her pending work and return to

her previous position before her unlawful demotion.

27. Plaintiff inquired yet again how Defendant Isreal could afford for Plaintiff to return to her position when she had just been demoted two weeks prior for financial reasons. However, Defendant Isreal did not respond to Plaintiff's multiple inquiries and simply demanded that she get to work right away.

28. Thereafter, on multiple occasions, Plaintiff complained to Defendants that she was being mistreated and discriminated against ever since she told them that she was pregnant.

29. By way of example only, Plaintiff complained that she was harassed, scapegoated, excluded from meetings, bullied, demoted (in duties, hours, and pay), paid late, and subjected to an increasingly hostile and demeaning work environment as soon as Defendants became aware of her pregnancy.

30. Moreover, Defendants retaliated against Plaintiff as soon as she began to complain of unlawful discrimination and a hostile work environment.

31. By way of example only, on one occasion in around March 2018, Defendant Isreal physically blocked Plaintiff from accessing her office and demanded why she was there in an extremely threatening tone. Plaintiff was so intimidated by Defendant Isreal's unfortunate conduct, that she instinctively stopped in her tracks several feet away from Defendant Isreal because she was concerned for her physical safety.

32. Around March 28, 2018, Plaintiff complained to Defendants' Human Resources Coordinator Niku Klobocishta (hereinafter referred to as "Klobocishta") due to the continuing mistreatment and retaliation she was forced to endure at the hands of Defendants. In her complaint, Plaintiff specifically complained that she was being "singled out for discriminatory treatment because [she is] female, minority, and/or pregnant."

33. Unfortunately, Defendants took no reasonable or immediate action to help combat the

discrimination, hostile work environment, and retaliation. On the contrary, as soon as Plaintiff submitted her complaint, Defendants began a targeted campaign of further discrimination and harassment.

34. By way of example only, Defendants instructed their employees and managers to avoid working, meeting, or responding to Plaintiff; excluded Plaintiff from management level meetings; removed Plaintiff from her roles and responsibilities; withheld information that Plaintiff required to perform her job; in addition to numerous instances of scapegoating, ostracizing, and harassing the Plaintiff. Notably, this conduct was unique to Plaintiff and did not occur with any of Defendants' non-pregnant employees.

35. Around April 4, 2018, Plaintiff met with Defendant Isreal to discuss her concerns. At that meeting, Plaintiff asked Defendant Isreal which other similarly situated employees also suffered adverse employment actions in order to improve Defendants' alleged financial issues.

36. In response, Defendant Isreal told Plaintiff that Defendants had reduced the hours for one of their recently hired dishwashers. Thus, Defendant Isreal equated Plaintiff's employment with Defendants to that of a recently hired dishwasher.

37. Upon information and belief, none of the executive level employees similarly situated to Plaintiff, suffered an adverse employment action in order to alleviate Defendants alleged financial issues.

38. Around April 10, 2018, Defendant Isreal hired his acquaintance, Christine Panas (hereinafter referred to as "Panas") for a newly-created Human Resources Manager position without needing her to go through the same rigorous multiple interview process that most middle and upper management positions with Defendants require.

39. Further, as Chief Management Officer, Plaintiff was normally tasked with leading the interview and decision-making process in hiring any and all of Defendants' middle and upper management

level personnel. However, Defendants decided to ignore their normal hiring practices, and deliberately decided to exclude Plaintiff from this all important decision.

40. Moreover, despite the fact that Defendants had recently hired a Human Resources Manager, they continued to ignore Plaintiff's complaints of discrimination and failed to take any reasonable or immediate action to help combat the discrimination, hostile work environment, and retaliation she was forced to endure.

41. Additionally, Defendants charged Defendant Doughnut Plant's Human Resources Manager Panas with many of Plaintiff's responsibilities and took away her role as supervisor of the Human Resources department. However, Defendants did not discuss these reductions in Plaintiff's job responsibilities proactively. Rather, Plaintiff learned of the elimination of these responsibilities over time as she tried to complete certain tasks that she later found out were no longer her responsibility. Thus, Defendants created this new Human Resources manager position with the intention of ultimately terminating Plaintiff's employment.

42. Around April 12, 2018, Defendants attempted to lure Plaintiff into waiving her legal rights by offering her a job as outside counsel if she would resign from her employment and sign a release. However, Plaintiff rejected their offer.

43. Around April 20, 2018, Defendants tried to make Plaintiff attend a "mediation" led by a practicing attorney. Defendants had arranged to pay all of the attorney's fees. However, they refused to disclose the identity, fee, or qualifications of the attorney that would lead this one-sided "mediation."

44. In fact, Defendants insisted that Plaintiff attend this "mediation" without an attorney and that she would have to sign a confidentiality agreement. Plaintiff again refused Defendants underhanded tactic, but she informed them that she was willing to attend a genuine mediation mutually arranged

and negotiated between the Parties. However, Defendants never reiterated their desire to mediate after Plaintiff indicated that she wanted to bring counsel and mutually decide upon the mediator.

45. Around May 3, 2018, Plaintiff asked Defendant Isreal for a status update concerning her complaint of discrimination, because Defendants had so far been ignoring her complaint. Specifically, Plaintiff inquired, "what are you (and Doughnut Plant) doing to resolve this situation and my discrimination claims?"

46. The next day, Defendants terminated Plaintiff by sending her a threatening letter via email stating for the first time, that she was not an employee of the company in an unfortunate effort to undermine her discrimination, hostile work environment, and retaliation claims. Furthermore, Defendants deliberately chose to terminate Plaintiff's employment on her birthday in order to further exacerbate her emotional distress.

47. Around May 17, 2018, Defendants continued their unlawful campaign of intimidation and harassment by sending Plaintiff another letter with threats against her license to practice law if she did not comply with Defendants' demand for information that they knew was already in their possession.

48. The above are just some examples of the unlawful discrimination, hostile work environment, and retaliation to which Defendants subjected Plaintiff.

49. Ultimately, Defendants discriminated against and terminated Plaintiff on the basis of her sex, gender, and pregnancy, in retaliation for her request for FMLA leave, and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

50. As a result of Defendant's discrimination, harassment, retaliation, and creation of a hostile work environment, Plaintiff continues to experience extreme anxiety, which has negatively impacted her pregnancy and has caused medical complications. Moreover, Plaintiff has commenced mental

health counseling due to the stress caused by Defendant's egregious conduct.

51. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she experienced difficulty eating and sleeping, along with suffering from pregnancy complications.

52. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted professional humiliation resulting in extreme emotional distress, depression, and extreme anxiety.

53. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of Defendants' unlawful and discriminatory actions, Plaintiff will endure unwarranted financial hardships and irreparable damage to her professional reputation.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

56. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

57. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

58. Plaintiff claims unlawful discharge and also seeks reinstatement.

59. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in

such case, Plaintiff claims that Defendants owed and breach its duty to Plaintiff to prevent discrimination, harassment, and retaliation and is liable therefore for negligence

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (As against Defendant Doughnut Plant)

60. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

61. Title VII states in relevant part as follows: "SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

62. Defendant Doughnut Plant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender and pregnancy.

63. Defendant Doughnut Plant violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (As against Defendant Doughnut Plant)

64. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."

66. Defendant Doughnut Plant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendant.

67. Defendant Doughnut Plant violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ. (As against Defendant Doughnut Plant)

68. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

69. Section 2612 of the Family Medical Leave Act (FMLA) states in pertinent part:

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

70. Defendant Doughnut Plant violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION AND INTERFERENCE UNDER THE
### FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
### (As against Defendant Doughnut Plant)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

72. Section 2615 of the FMLA states as follows:

    Prohibited acts

    (a) Interference with rights

    (1) Exercise of rights

    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this     subchapter.

    (2) Discrimination

    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

73. Defendant Doughnut Plant unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise Plaintiff's rights under the above section and discriminated and retaliated against Plaintiff for opposing Defendant's unlawful employment practice and attempting to exercise Plaintiff's rights.

74. Defendant Doughnut Plant violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

75. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

76. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, gender, familial status, and pregnancy leading to Plaintiff's wrongful termination.

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

79. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

80. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

81. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

82. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

83. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

### AS A SEVENTH CAUSE OF ACTION FOR AIDING AND ABETTING UNDER NEW YORK STATE LAW
### (Against All Defendants)

84. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

85. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

86. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

87. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

88. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

89. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

90. The New York City Administrative Code Title 8, §8-107(1) provides that it shall be an unlawful discriminatory practice: "For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, caregiver status, sexual orientation, uniformed service or alienage or citizenship of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

91. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her sex, gender, familial status, and pregnancy related condition.

92. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

93. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

94. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against

any person because such person has opposed any practices forbidden under this chapter…."

95. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiffs' employer.

96. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN TENTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

97. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

98. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

99. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR INTERFERENCE UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

101. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

102. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

103. Defendants violated the above section as set forth herein and Plaintiff suffered numerous damages as a result.

### AS A TWELFTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

104. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

105. The New York City Administrative Code Title 8, §8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides that "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another

employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

106. Defendants violated the above section and Plaintiff suffered numerous damages as a result.

### AS A THIRTEENTH CAUSE OF ACTION
### FOR DISCRIMINATION AND TERMINATION UNDER
### THE NYC PREGNANT WORKERS FAIRNESS ACT
### N.Y.C. Admin. Code § 8-101 et seq. § 8-107(22)
### (Against All Defendants)

107. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

108. The New York City Human Rights Law prohibits an employer or an employee or agent from discriminating against an employee in the terms and conditions of her employment and discharging an employee based on Plaintiff's disability and perceived disability due to her pregnancy and related medical condition. N.Y.C. Admin. Code §8-107(1)(a).

109. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTEENTH CAUSE OF ACTION
### FOR FAILURE TO PROVIDE A REASONABLE ACCOMMODATION UNDER
### THE NYC PREGNANT WORKERS FAIRNESS ACT
### N.Y.C. Admin. Code § 8-101 et seq. § 8-107(22)
### (Against All Defendants)

110. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

111. The New York City Human Rights Law prohibits an employer or an employee or agent from refusing to provide a reasonable accommodation, to the needs of an employee for her pregnancy,

childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job. N.Y.C. Admin. Code §8-107(22).

112. Defendants violated the New York City Pregnant Workers Fairness Act when they were aware of her pregnancy and related medical condition, but failed to provide her with a reasonable accommodation for the duration of her employment. Defendants additionally violated the NYC PWFA when they terminated her employment because she requested an accommodation for her pregnancy.

113. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
April 27, 2020

**DEREK SMITH LAW GROUP, PLLC**

By: **/s/ Daniel Altaras**

Daniel J. Altaras, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760